The Law Office of Kissinger N. Sibanda[1], PLLC
1802 Vernon St NW PMB 558, DC 20009
Email: ksibanda@temple.edu
Website: https://kissingersibanda.wixsite.com/kensibanda

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____FILED _____ENTERED
_____LODGED _____RECEIVED

NOV 1 5 2024


AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**RDB 24 CV 3 3 2 4**

| | |
|---|---|
| EBELE OKOYE, | |
| *Plaintiff,* | |
| -against- | |
| BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES, BALTIMORE DEPARTMENT OF HUMAN SERVICES, MEENA SALAMA, AKINTUNDE AKINSOLA, PAMELA COLE, JENNIFER MATHEWS, WENDY BALLARD, SHERELLI LEWIS-LEMON. | |
| *Defendants.* | |

1-24-Civ -

### COMPLAINT

1. Federal
   TITLE VII: 42 U.S. Code, Title 42 § 2000e-1(a), *et seq.*
   a. Retaliation
   b. Hostile work Environment
   c. Adverse Action
2. Human Rights State/City Violation.
   Md. Code, State Government, Title 20, Part 1, *et seq:*
   Discrimination
   a. Retaliation
   b. Adverse Action
3. Intentional Infliction of Emotional Distress

### JURY TRIAL DEMANDED

---

[1] Admission to Maryland District Court pending. An attorney, with a *forthcoming* District of Maryland application, Kissinger N. Sibanda, contributed to this submitted complaint.

Plaintiff EBELE OKOYE, through their attorney Kissinger N. Sibanda, against Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' of following: based on discrimination and retaliation for filing discrimination complaints; under Title VII, 42 U.S. Code, Title 42 § 2000e-1(a) ); under Maryland State Human Rights Law; and under Negligent Infliction of Emotional Distress tort. Ms. Okoye presently works at Office of Workforce Development, Baltimore City.

2.      The conduct complained of in this action involves Defendants' coercion, retaliation, and interference with Plaintiff's exercise of her work duties, unwarranted suspensions, bullying and creation of adverse work environment. Defendants interfered with plaintiff's job applications as detailed in this complaint, making sure to sabotage any change of work from the oppressive environment.

3.      Plaintiff alleges that she was discriminated against based on national origin (Igbo Nigerian[2]), race (black woman) and her gender as a woman in comparison to her fellow co-workers. Plaintiff further states that she always was qualified for her position, capable and able to do her job. A huge part of the discrimination complaint is because plaintiff is Igbo and defendant Akinsola is Yoruba. The two tribes (Igbo *vis-a-vis* Yoruba) |have a history of antagonism in Nigeria[3].

---

[2] As epitomized by attacking plaintiff's Nigerian accent.
[3] Akiwowo, Akinsola A. "The Sociology of Nigerian Tribalism?" *Phylon (1960-)*, vol. 25, no. 2, 1964, pp. 155–63. *JSTOR*, https://doi.org/10.2307/273649. Accessed 28 Oct. 2024.

4.      The retaliatory conduct following her protected activity includes, but is not limited to, the issuance of adverse performance ratings and evaluations, loss of overtime and other per session opportunities, as well as disciplinary letters to file.

5.      In sum, Plaintiff alleges that her employer, Baltimore County Department of Social Services, engaged in suspensions in retaliation for her discrimination complaints, both internal and external, violating her employment rights.

6.      All letter Exhibits were exchanged with Defendants in the administrative stage, prior to filing these claims. Thes alphabetical exhibits are not submitted here but an exhibit list is submitted to assist the court during the initial complaint phase. Exhibit: 3. Plaintiff reserves the right to attach any exhibit on rebuttal to any motion to dismiss as these exhibits are in defendants' custody as a result of the pre-claim interaction.

*All defendants are sued in both their official and unofficial capacity\*.*

## EXHAUSTION OF ADMININISTRATIVE REMEDIES

7. Ms. Okoye exhausted all administrative barriers, regarding filings with The Equal Employment Commission, before fling the instant matter, by filing actions with the various employment bodies – prefiling actions. Firstly, she filed an EEOC complaint, and then she filed a human rights complaint with the State.

8.  Human Rights granted a right to sue on August 20th, 2020. Exhibit: 1. Plaintiff also sent emails to her supervisors at various times of her employment.

9. EEOC's right to sue was also granted a right to sue in <u>August 20, 2024</u>. (Exhibit: 1)

10. Plaintiff timely filed a notice of claim against defendants BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES, AND BALTIMORE DEPARTMENT OF HUMAN SERVICES. (Exhibit: 2).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

12.    This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

13.    This action's venue properly lies in the United States District Court for Maryland, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to this action occurred in this District in Bronx County, Maryland, and Defendants are subject to personal jurisdiction in this District.

## PARTIES

14.    Plaintiff Ebele Okoye is a resident of Maryland and the State of Maryland. Plaintiff is currently residing in Maryland and employed by BALTIMORE CITY DEPARTMENT OF WORKS.

15.    At all times relevant herein, Defendant BALTIMORE COUNTY is municipal part of Baltimore City.

16.    At all times relevant herein, Defendants BALTIMORE DEPARTMENT OF HUMAN SERVICES supervises BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

17.    At all times relevant herein, Defendant MEENA SALAMA was plaintiff's supervisor at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

18.    At all times relevant herein, Defendant MEENA SALAMA was plaintiff's supervisor at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

19.    At all times relevant herein, Defendant AKINTUNDE AKINSOLA was plaintiff's supervisor at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

20. At all times relevant herein, Defendant PAMELA COLE was plaintiff's supervisor at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

21. At all times relevant herein, Defendant JENNIFER MATHEWS was as a manager at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

22. At all times relevant herein, Defendant WENDY BALLARD was plaintiff's manager at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

23. At all times relevant herein, Defendant SHERELLI LEWIS-LEMON was plaintiff's supervisor at BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES.

24. Defendants are equally and jointly liable to plaintiff for their liability and damage.

<strong>STATEMENT OF FACTS</strong>

<u>First Person Narrative From Ebele Okoye[4]</u>

**A. Notice of evaluation reports:**

25. "Mr. Salama became plaintiff's supervisor on January 25, 2023. After Mr. Salama was instructed on how to deal with plaintiff, the discrimination, harassment, bullying and retaliations intensified. After evaluation reports were done, plaintiff normally received written copies to read and respond to them. However, Mr. Salama and the management violated plaintiff's right when they stopped her copies of her evaluation reports in writing and implemented their own way of evaluations.

26. When plaintiff noticed what was happening, plaintiff wrote the document letter marked as a letter dated December 15, 2023 (F1 in EEOC file). Even after plaintiff filed this complaint, through a letter, to the managements and complained that her right to be

---

[4] The first-person pleading results because Ms. Okoye was self-represented in the exhaustive stages of her employment complaint: editing Okoye's first person narrative chills the advocacy in regards to "statement of facts."

informed of evaluations have been violated, they ignored plaintiff's complaint and conduct continued.

27. However, once management received the complaint filed with EEOC, they resumed giving plaintiff copies of evaluation reports in writing. Those documents are the State of Maryland Performance Evaluation report (PEP) (marked as R in EEOC file), and the State of Maryland Performance Planning and Evaluation Program Performance Improvement Plan (PIP) (marked as R1), with respond documents (marked as E11.)

28. Mr. Salama stated in one of the sections of the State of Maryland Performance Evaluation reports (PEP) signed on 12/27/23 marked as R : "Ms. Okoye has more than 5 years of experience. Due to her continued poor performance, she has been retrained multiple times. Therefore, additional training is not recommended at this time." Which was a false statement regarding her plaintiff's work abilities.

29. Form MS-22 Job Description: Mr. Salama sent me the email document marked as R2 and wanted me to sign the attached MS-22 Job Description form marked as R3. However, before I do that, I stated in that same document R2 quote "I have been instructed by my Union (AFSCME) Rep to find out from you why I am being given another MS-22 to sign again since I had signed one before." I sent the email document marked as R4 to my Union (AFSCME) representative Sharon Powdrill, copied Ryan Murphy and asked for their opinion before I sign the MS-22 form R3. Sharon Powdrill responded on the same document R4 quote "Please ask why he is submitting to you another MS-22. You do not have to sign it." Mr. Ryan Murphy whom I copied on the same email later called me on the phone, and after some discussion with him, he told me to sign that MS-22 form marked as R3.

30. Mr. Salama had me sign that MS-22 form R3 to justify what he wrote in the Supervisor comments of the Evaluation report marked as R that stated quote." She has struggled to accurately complete 10 cases per day. Ms. Okoye has not demonstrated the ability to meet the performance standard of accurately completing 15-18 cases per day as outlined in her MS-22 with an accuracy rate of at least 95%." So if I am supposed to do 15-18 cases per a day, does he give the same number of assignment cases to my coworkers? Read the highlighted comments on documents marked as J, J1, J2, and J3.

31. Mr. Akinsola and Ms. Cole are not my direct supervisors, but they are still copied in most of the emails I sent. The email document marked as N1 dated April 6, 2023 from Sherelli Lewis- Lemon (District Manager) to me stated quote "Is there a specific reason you are continually leaving supervisor Ms. Pamela Cole out of your emails? If not, effective immediately, you are to include all of the supervisory team as directed by the Application Team SOP and your supervisor."

32. Then the document marked as N2 from my supervisor Mr. Salama stated quote "As you complete your cases please send them in a separate email to all leads for each case." The document marked as N3 shows how I copied Ms. Pamela Cole in my emails.

33. Ms. Pamela Cole, who has discriminated, harassed, bullied and retaliated against me, was not my immediate supervisor now. However, with those documents marked as N1 and N2 that instructed me to copy her in all my emails, with the work assignment given to us on the document marked as N dated December 15, 2023, showed that she and the other management officials I copied on my emails, still have some decisions makings on my works in the department.

34. TCA Training: For more than 5 years that I have been working in the department, I have not been formally trained on TCA duties. However, Mr. Salama intentionally

gave me assignments with TCA duties to give the impression that I do not know what I am doing. He never told the management officials he copied on the emails that I was not trained for that TCA duties. Read the highlighted documents marked as T, T1 and T2. Now that I have filled a complaint with EEOC, they have decided to train me on TCA duties. Read the documents marked as T3 and T4, both emails dated January 10, 2024.

35. Dress code: The document marked as U is our dress code policy sent to me by Mr. Salama on 2/28/23. Read the highlighted comments on the other documents marked as U1 and U2. Then look at the pictures numbers 2, 3, 4, 5, 6, 7, 7A, 7B, 8, 8A and 8B of the clothing that my coworkers were wearing, and nobody reprimanded them. However, I was targeted by Ms. Pamela Cole that the cloth I wore on the picture marked as number 1 violated the dress code policy.

36. Mr. Salama has instituted his own ways of discrimination, harassment, bullying and retaliations on me by making false allegations just to make it seems as if I do not know how to do my job, and then use that to give me some disciplinary actions without pay, including forfeiting 10 days of my annual vacation. These documents marked as M4, M5, M6, M7, M8, M9, M10, M11, M12, M13, M14, M15, M16 and M17 are some of the disciplinary actions the management has given on me since Mr. Salama became my supervisor and I let my Union (AFSCME) representatives know about them. Please read the documents marked as M3, A, B, C and D to see how I proved that the allegation he used to suspend me for three weeks without pay was false.

37. The documents marked as E8 and G2 was the follow up complaint I wrote to the Human Resources Manager, Jennifer Matthews and forwarded to my Union (AFSCME) representative Mr. Murphy, regarding my personal files and on Workday after I wrote the document marked as G.

38. I recently had some job interviews for the position of Human Service Specialist III, Administrative Officer III, Administrative Officer II PIA Lead, HR Officer I and Human Resources Generalist (HR Officer I). I am still waiting for the result from the employers. The documents marked as K2 and K3 are more job offers I received and was looking forward to working with the prospective employers. However, the employers rescinded their offers and the reason given was that the documentations with my current employer were not favorable. Which meant that the prospective employers only read the biased comments the managements have on my personal files and on Workday without reading my responses to my evaluation reports, that the management intentionally removed from my personal files and on Workday.

39. I wrote the document marked as K4 to my Union (AFSCME) representative Mr. Ryan Murphy in which I expressed my frustration for not getting job offers after I went for job interviews because of how the management sabotaged my personal files and on Workday. The management instructed me that whenever I have any job interview, to send the interview letter or cover letter to my supervisor. To me, that raises some alarm, maybe they use the information on those letters to call and told the prospective employers to read my sabotage personal files and on Workday and see all the dissatisfactory comments on my evaluation reports without my responses before they make the decision whether to hire me or not.

**B. Infractions Against Clothing**

40. I disagree with what they stated on number 10 of that settlement agreement quote "Ms. Okoye agrees to withdraw the appeal – DHS Case # 24 – 12, 24-23, 24-28 and of her ten (10) day suspension. Further, Ms. Okoye agrees to the following: (1) not to pursue in any forum, any issues concerning these disciplinary actions imposed; and, (2) to release, BOCDSS, DHS, the State of Maryland, and the agents, servants and employees of these entities from any claims of any nature relating to these suspensions."

41. The document marked as F5 addressed to my Union Representative, was my respond to the Settlement Agreement in which I stated that I would not accept the Agreement. The Management sent a reversed Settlement Agreement on the document marked as F6, which I rejected. Read the text message comments from some of my Union Representatives on the documents F7, F8 and F9.

42. Since Mr. Salama became my supervisor on January 25, 2023, the discrimination, harassment, bullying and retaliations have intensified. The highlighted comments on the documents marked as V, V1, V2, V3, V4, V4A, V5, V6, V7, V8, V9, V10, V11, V12, V13, V14, V15, V16, V17, V18, V19 and V20 showed the hostile work environment that the management subjected me to, and it is still happening to the present date.

43. The mental anguish and emotional distress that I have endured for more than five years that I have worked in the department is enormous. I have requested on many occasions to be transferred to another department to avoid the hostile work environment that I am being subjected to in the department, but the management denied my requests. Then

when I applied for jobs in other departments, the management sabotaged my personal file and on Workday and prevented me from getting those jobs.

44. The management, particularly Mr. Salama has hurt me personally and financially when he fabricated false allegations just to justify the suspensions without pay that he gave me, and the forfeiture of 10 days of my annual leave. Again, please read the documents marked as M3, A, B, C and D in my previous EEOC complaint letter, to see how I proved that the allegation he used to suspend me for three weeks without pay was false."

**End First Person Narrative**

### C. Suspensions

45. **Given on** 7/25/23, (From 7/26/2023 to 8/15/2023), 15 days of suspension without pay Exhibits (M1) & (M2) also mentioned on Exhibit M13

46. **Given on** 9/21/2023, 5 days Annual leave forfeiture (Exhibit M5)

47. **Given on** 10/19/2023, 5 days Annual leave forfeiture (Exhibit MS)

48. **Given on** 11/8/2023, 10 days of suspension without pay (From 11/14/23 to 11/27/23) (Exhibit M10)

49. **Given on** 2/13/2024, (From 2/14/23 to 2/29/23) 12 days of suspension without pay (Exhibit M18)

50. These suspensions were a pattern of escalation against plaintiff.

### First Person Narrative from Ebele Okoye *

### D. Retaliation:

51.    "Defendants took <u>adverse employment actions</u> including suspensions against plaintiff.

52.    Plaintiff's protected activity (to complain about discrimination) was violated. Alternatively, it was the *direct cause* of her adverse work environment, including suspensions and a hostile work environment. The two, retaliation and adverse action are inextricably linked, and in a temporal time frame. The retaliation was directly because of the discrimination complaints.

53.    Similar situated employee, who did not engage in the protected activity were not treated adversely.

54.    At all-times, plaintiff was of equal rank and similarly situated with her co-workers.

55.    Plaintiff alleges a causal connection between her protected activity, and the adverse actions taken against her.

56.    Defendants were not justified in their retaliation against plaintiff by creating an <u>adverse work environment</u> thorough systemic suspension, write-ups, designed to punish her for exercising her protected activity.

57.    Defendants took an adverse action against plaintiff with <u>intent</u>– to retaliate against her.

58.    "Though EEOC have 300 calendar days time limits for filing a charge of discrimination. However, I want to state when my systematic discrimination, harassment, bullying and retaliation started, and how I have requested on many occasions to be transferred to another department to avoid the torments and emotional distress I have been subjected for some number of years now, but the management denied my requests.

59. I am originally from Nigeria but now a United State Citizen. I started working with Since Maryland State Government as a Family Investment Specialist I, in May 9, 2018. then, I have experienced continuous discriminations, harassment, bullying and retaliations from different management employees. I had complained to the management on several occasions through emails and certified mails with the United State Postal Services, about my accusation of discrimination, harassment, bullying and retaliations by Mr. Akinsola, Ms. Cole, Ms. Lewis and Mr. Salama etc. in the department. I also cited instances to which those incidents occurred, and those accusations are still happening to date, and nothing has been done to resolve my problems. But instead, I was put on suspension without pay twice and was made to forfeit 10 days total of my annual leaves based on false accusations. I will go in details about these incidents later in my writings.

60. These are some of the Management officials that I copied on my complaints through emails and through the United States Postal Services' certified registered mails.

61. H. R. Manager Ms. Jennifer Matthews, The Director Dr. Gregory Branch, FIA Assistant Director Ms. Felecia Billingsley, The Deputy Asst. Director Ms. Rosalyn Taylor and my Union (AFSCME) Rep Mr. Ryan Murphy. Others are Senator Hollen and Cardin. To date nothing has been done to resolve my problems.

62. The documents marked as **X1, X2, X3, X4, X6, X6, X7, X7A, X8, X9, X9A, X10, X10A, X10B, X11, X12, X13, X14, X15, X16** and **X17** showed the complaint letters of discrimination, harassment, bullying and retaliations that I have written to several management officials. After the incident I had on the 7/21/2021 on the document marked as **X10** and **E5**, I wrote the complaint letter marked as document **X11** to the Human Resources Manager and copied

different management officials and requested for an immediate transfer to any other departments just to get away from the hostile work environments and the mental stress anguish I was subjected to in the department.

63.    On August 12, 2021, I wrote the email letter marked as document **X13** to Ms. Matthews and asked her quote "Per my conversation with you yesterday Wednesday 8/11/21 regarding my request for transfer, please I will like an update. And I still maintain that I don't want to work with Mr. Akinsola directly or indirectly." She responded on August 13, 2021 in the same document marked as **X13** quote "I am responsible for almost 2,000 employees. I am working on many cases and will get back to you as soon as possible."

64.    Instead of transferring me to another department to ease the discrimination, harassment, bullying and retaliations, I received the letter dated February 18, 2022, marked as document **Y** from Baltimore County Department of Social Services, and the conclusion of the letter stated quote "Your request to be transferred has been denied. Mr. Akinsola, Ms. Ballard and Ms. Marcus are within their management rights to place you on a PIP to give you the opportunity to take proactive steps before your next PEP because your current performance has fallen below a satisfactory level."

65.    Though Ms. Cole was not my immediate supervisor but she still influences the decisions of the management in 2023. One incident happened in **March 2023.**

66.    I have been harassed by Ms. Cole on several occasions and also over my dressing which she said violated the dress code, to which Ms. Rosalyn Taylor (the Deputy Asst. Director) whom she complained to, saw nothing wrong with my dressing. Enclosed picture number **1,** was the picture of what I wore that day. However, my coworkers were not confronted with the type

of clothing they wear to work which violates the dress code. Look at the enclosed pictures number 2, 3, 4 and 5 for some of the dressing by my coworkers to work, but they were not reprimanded.

67.     The document marked as **N** showed that in December 15, 2023, Ms. Pamela Cole gave us work assignments and we reported to her after the assignment was completed.

68.     Mr. Akinsola and Ms. Pamela Cole are not my immediate supervisors, but they are being copied in most of my work assignments emails, which shows that they have some influence in some of the decision made on me.

69.     **On June 8, 2023,** I wrote the letter marked as **G** (Missing documents and records on my Employment Personal files and on Workday), to Jennifer Matthew, the Manager of the Human Resources Department, to inquire the reason all the enclosed document responses marked as **E, E1, E2, E3, E4, E5, E6, E7, E8, E9 and E10** that I wrote and attached to my evaluation reports was intentionally removed from my personal files and on Workday.

70.     Please read the document marked as **G** to see how my rights were violated under the sections for **Mid-Cycle Evaluation** and **End-of-Cycle Evaluation of the** State of Maryland Performance Planning and Evaluation Program (PEP) Guidelines and Instructions for employee written responses to evaluation reports. In the section for the **Mid-Cycle Evaluation,** some part of it stated quote

71.     **"No disciplinary action is attached to the mid-cycle rating itself, and the mid-cycle rating is therefore not grievable; however, if the employee disagrees with the supervisor's mid-cycle rating, the employee may, within five (5) days of receipt of the mid-cycle evaluation, submit to the employee's appointing authority a written response to the rating, which shall be attached to the written mid-cycle evaluation."** Note, I have some

written responds that I attached and submitted with my evaluation reports for that period, but all my responds was not included in my personal files and on Workday.

72.    Then for the **End-of-Cycle Evaluations,** some of that section stated quote **"If the employee wishes, she/he may also make comments on the evaluation.  These may be entered in the Employee's Comments box, or "See attached" may be entered, and the employee's comments in a separate document may be attached."**

73.    The management deliberately removed all the responses I wrote and attached to my evaluation reports so that prospective employers would only review all the biased evaluations and ratings they have in my personal files and on Workday without reading my responses. On July 27, 2023, I wrote an email to Ms. Matthews on the document marked as **G1** and requested an update to what I wrote in the documents marked as **G** regarding my personal files records and on Workday. To this present date, nothing has been done about the missing respond documents in my personal files and on Workday.

74.    I have applied for several job openings and had some interviews for some of them. I expected that I would be offered some of the jobs, but was baffled when I did not get the job offers. Further investigation by me revealed that my employee personal files and on Workday were intentionally tampered with, because it does not have all my evaluation responses that should have been in my files when the prospective employers reviewed my personal files and on Workday for employments. The prospective employers only saw and read in my personal files and on Workday all the biased evaluation reports without reading my responses that was attached to those reports.

75.    For the past years, I had some job interviews for the positions listed below and expected some job offers for some of those jobs, but was not hired for any of the jobs.

A.  H R Officer III

B.  H R Officer II

C.    3.  Personnel Associate II

D.    4.  Lead Worker (Acting Capacity)

E.    5.  H R Specialist Trainee

F.    6.  H R Administrator II

G.    7.  Family Investment Specialist IV

H.    8.  H R Specialist

I.    9.  Administrative Officer II

J.    10. Personnel Associate II

K.    11. H R Officer I

L.    12. Administrative Officer I

M.    13. Family Investment Specialist IV

N.    14. Department Supervisor job

O.    15. Office of The Public Defender

P.    16. Family Investment Specialist Supervisor I

Q.     Baltimore County DSS FIS IV

R.     Family Investment Spec IV, Baltimore County

S.     Family Investment Specialist III

T.     Department of Health and Human Services

U.    Family Investment Specialist IV/OLTC

V.     FAMILY INVESTMENT SPECIALIST IV (23-003547-0001)

W.    FIS III at AA County DSS

X.    MARYLAND STATE INVITE* HR Officer II #23-004916-0007

Y.    Baltimore County DSS FIS Supervisor I

Z.    DPSCS Administrator III

AA.    Human Resources Assistant (Baltimore, MD)

BB.    HR Administator I

CC.    Admin Officer II Position

DD.    31. Personnel Associate III

EE.    32. HR Administrator I, Clifton T. Perkins Hospital Center

FF.    33. HR OFFICER III

GG.    34. Office Supervisor position with the Anne Arundel County

HH.    35. Administrator I. Annapolis, MD.

II.    36. Election Program Supervisor II Position

JJ.    37. Election Program Sup II (ANNE ARUNDEL COUNTY)

KK.    38. Administrator I, Annapolis, MD.

LL.    39. Baltimore County DSS FIS III

MM.    40. Personnel Associate II, Anne Arundel County

NN.    41. Human Resource Officer I position at the Maryland State Police

OO.    Family Investment Supervisor I, Anne Arundel County

3572.0008.1014-295831.1                              18

76. The document marked as **K** was the form I signed for the release of information to the employers that wanted to hire me. For the current year 2023, I applied and went for some job interviews and received about four job offers. The documents marked as **K1** was one of the job offers I received for those jobs. I accepted the job offers and looked forward to working at those Agencies with the prospective employers. However, those prospective employers rescinded the job offers, and the reasons they gave me was that my documentations with my employer was not favorable. This meant that those prospective employers reviewed my personal files and on Workday, after I have signed the document marked as **K**. They saw all the not satisfactory ratings and comments from some of my supervisors on different evaluation reports, which were biased without reading my responds to those evaluation reports, and made their decision not to hire me for those jobs for which I was already accepted.

77. For over five years that I have experienced discrimination, harassment, bullying and retaliations in the department, all I wanted was to be transferred out of that hostile work environment, but my request was denied. I have been subjected to some mental anguish and emotional distress because of my accusations and nothing has been done to resolve my problems. I am still experiencing the same emotional distress to date. Please read in details all the letters of discrimination, harassment, bullying and retaliation complaints marked as **X1, X2, X3, X4, X5, X6, X7, X8, X9, X10, X11, X12, X13, X14, X15, X16 and X17** and **E5** to the managements. This hostile work environment has affected my health and the output of my work.

78. The documents marked as **X16** was the Discrimination, Harassment, Bullying and Retaliation complaints I filed with the Secretary of Human Services Mr. Lopez per the advice of

my Union (AFSCME) Rep Mr. Ryan Murphy. I was also advised to file a complaint with **EEOC** on the document marked as **F**. The document marked as **F1** was the letter I wrote to my Union (AFSCME) Rep. Mr. Ryan Muphy. and copied other management officials to show the Inappropriate Management Actions been taken against me and how my rights under The State of Maryland Performance Planning and Evaluation Program Guidelines and Instructions are been violated. The document marked as **F2** was the email to notify my Department that my Union is presenting me in my disciplinary actions. The document marked as **F3** showed the discussions my Union Representatives had with the management about the disciplinary actions I was given and what they are proposing to settle for the disciplinary actions.

79.     On July 27, 2023, my supervisor Mr. Salama made up false allegations and I was suspended for three weeks without pay. Documents marks as **M1** and **M2** are the Notice of the Disciplinary Action. Read the documents marked as **M3, M4** and the emails marked as **A, B, C** and **D,** to see how I proved that the allegations was falsified. Note, On the Google Sheet for assignment marked as **X17**, my name is the only name that my supervisor Meena Salama marked red on the columns and no other person's name.

80.     The documents marked as **H**, showed that in August 2023, I file Discrimination complaint and working under hostile work environment with the Office of Employment and Program Equity (OEPE). The documents marked as **H1** was the respond I received from that office which stated that my complaint was untimely and closed my case. The other documents marked as **H2** showed the responds I received from Baltimore County Department of Social

Service about my complaint of working in hostile work environment, and my complaint was denied.

81.     I wrote the Step Increase and Retroactive payments complaint letter marked as **L** to my Union because I was not given those payments at the same time my coworkers receive their payments.

82.     I was given three weeks suspension without pay from July 27, 2023 to August 16, 2023 based on false allegations. In addition, I was made to forfeit five days each of my personal (annual) leave on September 21, 2023 and October 19, 2023 for a total of 10 days. Then I was given another two weeks suspension without pay from November 14, 2023 to November 27, 2023. It was obvious that all these was done in retaliation of my complaints about discrimination, harassment and bullying at my workplace to the management and to Mr. Rafael Lopez, the Secretary for Human Services to the Maryland State Government under the advice of my Union (AFSCME) Rep. Mr. Ryan Murphy. And another 12 Days suspension without pay from February14, 2024 to February 29, 2024.

83.     In some of my complaint letters, all I wanted and requested was to be transferred out of the hostile work environment to another department because the management in my current department never sees any good behaviors in me. The management has also prevented me from getting other jobs, when they intentionally removed all the responses I wrote and attached to my evaluation reports in my personal files and on Workday. Whatever I do in the department is not

good in their opinions. For over five years now that I have worked in this hostile work environment, it has affected my health and emotional distress enormously."

.

**End of first person insert.**

**FIRST CLAIM**

*(Discrimination (national origin)* – Title VII)
*(To all defendants,)*

84. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

85. Defendants, through their conduct, have violated Title VII, by targeting Ms. Okoye for being of Igbo ethnicity. Their issues stem from Nigeria sociology and tribalism against her Igbo tribe.

86. At all times defendants, as directed or influenced by Akinsola weaponized Ms. Okoye's national original and accent, as a sense of poor work performance.

87. At all times, Ms. Okoye received disparate treatment from non-Igbo workers.

88. At all times she was targeted as pleaded here for frivolous dress code violations, suspensions, reduction of work and a hostile work environment.

**SECOND CLAIM**

*(Discrimination (gender)* – Title VII)
*(To all defendants,)*

89. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein. Defendants, through their conduct, have violated Title VII, by discriminating against Plaintiff for being a female worker.

90. Defendants treated plaintiff differently from other co-workers, because she is a female, as evidenced by write-ups and attacks on her work ethic. Similar situated males were not treated like plaintiff.

91. At all times defendants did not treat males with the same disdain, and ridicule plaintiff was treated.

## THIRD CLAIM
### (Title VII – Hostile Work Environment)
### (*To all defendants)*)

92. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

93. Defendants created a hostile work environment by targeting plaintiff for false wardrobe violations, attacks on her accent and emails with demeaning content.

94. At all times defendants chose to treat plaintiff disparate from their "in" group, she was an outsider marked for hostile and retaliatory action.

95. The hostile work environment was evidenced by failure to adhere to internal email and suspension policies.

96. Defendants' actions were directly responsible for the resulting hostile work environment, requiring plaintiff to take therapy.

## FOURTH CLAIM
### (MARYLAND STATE HUMAN RIGHTS LAW (NYSHL)
### (MARYLAND CITY HUMAN RIGHTS LAW (NYCHL))
### *Race and National Origin*
### *(To all defendants)*

3572.0008.1014-295831.1                           23

97. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

98. Defendants, through their conduct and discrimination, have violated Maryland State Human Rights Law (MDSHRL) and Maryland City Human Rights Law (NYCHRL) by discrimination and retaliating, against her as a woman of Nigerian.

99. Defendants discriminated by treating plaintiff disparate from other works; as shown in frivolous suspensions, attack on her dress wardrobe and Nigerian accent.

100. Defendants went to a great effort to block job offers plaintiff had received, bordering on the criminal. This was directly adverse and material interference with plaintiff's work.

101. Plaintiff suffered damages, not limited to emotional pain and suffering for the direct discrimination (disparate treatment), resulting in loss of job offers, responding to frivolous suspensions and demeaning work emails, as detailed here.

## FIFTH CLAIM
### (MARYLAND STATE HUMAN RIGHTS LAW (NYSHL)
### (MARYLAND CITY HUMAN RIGHTS LAW (NYCHL))
*Retaliation*
*(To all defendants)*

102. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

103. Defendants, through their conduct and discrimination, have violated Maryland State Human Rights Law (NYSHRL) and Maryland City Human Rights Law (NYCHRL) by discrimination and retaliating, against her as a woman of Nigerian

origin; and for filing discrimination employment complaints both internally and externally.

104.   Defendants retaliated at plaintiff engaging in protected activity (complaining against work discrimination).

105.   Plaintiff suffered damages, not limited to emotional pain and suffering for the discrimination, resulting in retaliation.

106.   Defendants by blocking plaintiff's employment opportunities *caused* her emotional pain and suffering.

## FIFTH CLAIM
### Negligent Infliction of Emotional Distress
*(as to all defendants)*

133. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

134. Defendants through their actions (unjustified punishment motivated by a policy to discriminate against her), she suffered emotional pain and suffering.

135. Plaintiff suffered physically, at having to endure reputational damage to her long hard-won career, through attacks against her accent, national origin, accent and frivolous suspensions.

136. Defendants should have known that their actions would result in emotional and reputational harm by bringing false suspensions against plaintiff. Consequently, their inactions, or actions were a *but for*, cause or direct cause of plaintiff's deteriorating emotional state and stress, at that time. Defendants caused a measurable and irreparable harm resulting from false suspensions.

137. Defendants by blocking plaintiff's employment opportunities causes emotional pain and suffering.

138. Plaintiff had to receive psychiatrist treatment to deal with defendants' actions. As documented here.

## JURY DEMAND

137. Plaintiff demands a trial by jury on all the triable issues in this complaint.

## PRAYER FOR RELIEF

138. WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

   A. A declaratory judgment that Defendants violated Title VII, regarding the above claims.

   B. A declaratory judgment that Defendants violated the MDSHRL and the MDCHRL, human rights claims.

   C. Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages and damages accruing because of numerous lost employment opportunities) and punitive damages (to the extent available) pursuant to the various statutes.

   D. Awarding Plaintiff costs; and reasonable attorney fees.

   E. *Such other and further relief* as this Court may deem just and proper.

   F. Damages in the sum of $3,500,000.

Dated:     Baltimore, Maryland
           NOVEMBER 12, 2024,

                                                    By:    /s/
                                                    Ebele Okoye

3572.0008.1014-295831.1                26

FILED ON BEHALF OF EBELE OKOYE BY:

Dr. Kissinger N. Sibanda Esq
*Plaintiff's attorney*
ADMITTED DC DISTRICT COURT
MARYLAND DISRICT COURT Admission pending*

3572.0008.1014-295831.1                    27