IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **EBELE OKOYE,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:24-cv-03324-JRR |
| **BALTIMORE COUNTY DEPARTMENT OF SOCIAL SERVICES,** *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

This matter is now pending before the court on the following Motions: Defendants Meena Salama, Akintunde Akinsola, Pamela Cole, Wendy Ballard, and Sherelli Lewis-Lemon's (collectively "State Defendants") Motion to Dismiss (ECF No. 24), Defendant Jennifer Matthews's Motion to Dismiss (ECF No. 33) (collectively, the "Motions"), and Plaintiff's surreply, which the court construes as a Motion for Leave to File Surreply (ECF No. 41). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, by accompanying order, the Motions and the Motion for Leave to File Surreply will be granted.

**I.   BACKGROUND**[1]

**A. Factual Background**

*Pro se* Plaintiff Ebele Okoye, a Black Nigerian woman (of Igbo ethnicity) and a United States citizen, began working as a Family Investment Specialist I for the Baltimore County Department of Social Services ("BCDSS") on May 9, 2018. (ECF No. 8 ¶¶ 3, 5, 59.) Plaintiff

---

[1] For purposes of resolving the Motions, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 8.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

alleges that since beginning her employment, she has experienced "continuous discrimination[], harassment, bullying[,] and retaliation[] from different management employees[,]" including Defendants Akinsola, Cole, Lewis, and Salama. *Id.* ¶ 59. She asserts she was subjected to discrimination by Defendants on the basis of her national origin, race, and gender. *Id.* ¶ 3. Plaintiff states that, in large part, her complaint of discrimination stems from the fact that she is Igbo and Defendant Akinsola is Yoruba, two Nigerian tribes with "a history of antagonism." *Id.* Plaintiff has repeatedly complained about this conduct in writing to management, "H.R. Manager" Defendant Jennifer Matthews, her union representatives, and various state officials; nonetheless, she alleges, the incidents described *infra* "are still happening and nothing has been done to resolve [her] problems." *Id.* ¶¶ 59, 61–62.[2]

On January 25, 2023, Defendant Salama became Plaintiff's supervisor, after which the discrimination, harassment, bullying and retaliation against Plaintiff intensified. (ECF No. 8 ¶ 25.) Prior to this time, Plaintiff routinely received written copies of her performance evaluation reports and was permitted to "read and respond to them." *Id.* Plaintiff sets forth the State of Maryland Performance Planning and Evaluation Program ("PEP") Guidelines and Instructions for both Mid-Cycle Evaluations and End-of-Cycle Evaluations.

The Mid-Cycle Evaluation Guidelines state in pertinent part:

> No disciplinary action is attached to the mid-cycle rating itself, and the mid-cycle rating is therefore not grievable; however, if the employee disagrees with the supervisor's mid-cycle rating, the employee may, within five (5) days of receipt of the midcycle evaluation, submit to the employee's appointing authority a written response to the rating, which shall be attached to the written mid-cycle evaluation.

(ECF No. 8 ¶ 71.) The End-of-Cycle Evaluation Guidelines state in pertinent part:

---

[2] The court notes that Plaintiff's Amended Complaint makes reference to numerous exhibits that are not attached to the pleading and appear to have been submitted with her EEOC charge.

> If the employee wishes, she/he may also make comments on the evaluation. These may be entered in the Employee's Comments box, or "See attached" may be entered, and the employee's comments in a separate document may be attached.

*Id.* ¶ 72. Plaintiff asserts that, once Defendant Salama became Plaintiff's supervisor, Salama and "management" stopped providing her with written copies of her evaluations and "implemented their own way of evaluations." *Id.* ¶ 25.

After Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), management resumed providing Plaintiff written copies of her evaluation reports, including a State of Maryland Performance Evaluation Report ("PER")[3] and a Performance Improvement Plan ("PIP"). (ECF No. 8 ¶ 27.) Defendant Salama also required Plaintiff to sign an MS-22 Job Description form, which she had previously signed, "to justify what he wrote" on the PER of December 27, 2023. Plaintiff's December 27, 2023, PER contained the following statement from Salama:

> Ms. Okoye has more than 5 years of experience. Due to her continued poor performance, she has been retrained multiple times. Therefore, additional training is not recommended at this time. She has struggled to accurately complete 10 cases per day. Ms. Okoye has not demonstrated the ability to meet the performance standard of accurately completing 15-18 cases per day as outlined in her MS-22 with an accuracy rate of at least 95%.

*Id.* ¶ 28, 30. Plaintiff claims that this "was a false statement regarding her []work abilities." *Id.* ¶ 28. She raised concerns with her union representatives who initially advised her not to sign the MS-22 form, but later instructed her to sign it. *Id.* ¶ 29.

Plaintiff questions whether Defendant Salama assigns the same number of assigned cases to her coworkers (ECF No. 8 ¶ 30), and claims she submitted written responses to her evaluation

---

[3] Plaintiff abbreviates this as "PEP," despite "Performance Evaluation Report" suggesting the acronym would more properly be "PER." (ECF No. 8 ¶ 27.)

reports pursuant to the above guidelines, but her responses were "deliberately removed . . . so that prospective employers would only review [] the biased evaluations and ratings" in her personnel file. *Id.* ¶ 73. Plaintiff subsequently informed Defendant Matthews of the Human Resources Department that her evaluation responses had been removed from her personnel file in violation of the PEP guidelines; and as of the date Plaintiff submitted her Amended Complaint, no corrective action had been taken. *Id.*

Additionally, Plaintiff alleges she received assignments with TCA duties[4] from Defendant Salama, despite not having been trained for TCA duties since working for BCDSS. (ECF No. 8 ¶ 34.) During this period, the District Manager, Defendant Lewis-Lemon, required Plaintiff to copy "all of the supervisory team" on her emails, which included Defendants Salama, Cole, and Akinsola. *Id.* ¶ 31. Plaintiff claims that Defendant Salama did not tell the other "management officials" copied on the emails that she was not trained for TCA duties and that this was done "to give the impression" that she did not know what she was doing. *Id.* ¶ 34. After filing her EEOC charge, Plaintiff was trained on TCA duties. *Id.*

Beginning in 2021, Plaintiff repeatedly requested in writing to be transferred to a different department to escape "the hostile work environment[] and the mental stress [and] anguish" to which she had been subjected. (ECF No. 8 ¶ 62.) In one such request, Plaintiff stated that she did not want to work with Defendant Akinsola "directly or indirectly." *Id.* ¶ 63. On February 18, 2022, Plaintiff's request to be transferred was formally denied by BCDSS by letter, which advised: "Your request to be transferred has been denied. Mr. Akinsola, Ms. Ballard and Ms. Marcus are within their management rights to place you on a PIP to give you the opportunity to take proactive

---

[4] Plaintiff does not specify what TCA duties are or what they entail.

steps before your next PEP because your current performance has fallen below a satisfactory level." *Id.* ¶ 64.

Defendant Salama provided Plaintiff with a copy of the employment dress code policy on February 28, 2023. (ECF No. 8 ¶ 35.)  Plaintiff asserts she was personally targeted and harassed by Defendant Cole for violations of the dress code despite Deputy Assistant Director Rosalyn Taylor finding nothing improper with her attire. *Id.* ¶ 35, 66.  She alleges that her coworkers routinely wear clothing that violates the dress code without reprimand. *Id.*[5]

Between July 2023 and February 2024, Plaintiff was subjected to multiple suspensions without pay and forfeitures of annual leave, including a 15-day suspension in July 2023, two five-day annual leave forfeitures in September and October 2023, a 10-day suspension in November 2023, and a 12-day suspension in February 2024. *Id.* ¶ 45–49.  Plaintiff claims this was a pattern of escalation against her. *Id.* ¶ 50.

Over the past several years, Plaintiff has applied for 41 different positions in an attempt to leave her position as Family Investment Specialist I for BCDSS; she has not been hired for any such position. (ECF No. 8 ¶ 75.)  Plaintiff claims that she signed a form for the release of information, including documents in her personnel file, to prospective employers. *Id.* ¶ 76.  Although Plaintiff received four job offers, the offers were later rescinded after the prospective employers reviewed her employment records. *Id.*  She asserts that the job offers were rescinded because her file included the "biased" evaluation reports from her supervisors but did not include her responses. *Id.*  Plaintiff also claims she was instructed by management to inform them whenever she had a job interview, raising concerns that management interfered with her prospective employment opportunities. *Id.* ¶ 39.

---

[5] Again, the Amended Complaint references enclosed photographs depicting the attire worn by Plaintiff's coworkers, but no such photographs are attached to the pleading. (ECF No. 8 ¶ 35, 66.)

Plaintiff claims that as a result of her continued complaints concerning discrimination, harassment, and bullying from her managers (including attacks directed at her Nigerian accent), she was retaliated against and experienced a hostile work environment. (ECF No. 8 ¶¶ 3, 52, 59.) Rather than address her complaints, Defendants subjected Plaintiff to adverse employment actions, including suspensions without pay, forfeiture of leave, biased evaluations, denials of transfer requests, and interference with prospective employment. *Id.* ¶¶ 52, 82–83. She asserts that as a result of Defendants' conduct, she has suffered mental anguish, emotional distress, damage to her professional and personal reputation, and financial loss for more than five years. *Id.* ¶¶ 43–44.

### B. Procedural History

Prior to this action, Plaintiff filed charges of discrimination with the EEOC and the State of Maryland.[6] (ECF No. 8 ¶ 7.) On August 20, 2024, Plaintiff received a right to sue letter from the EEOC. (*Id.* ¶ 9; Ex. 1, ECF No. 8-1.) Plaintiff initiated this action on November 15, 2024 (ECF No. 1) and filed an Amended Complaint on December 2, 2024, to correct several deficiencies noted by the Clerk's Office. (ECF No. 8.) Plaintiff asserts claims against Defendants Baltimore Department of Human Services, BCDSS, and her individual supervisors and managers, Meena Salama, Akintunde Akinsola, Pamela Cole, Wendy Ballard, Sherelli Lewis-Lemon, and Jennifer Matthews[7]. *Id.* ¶ 14–23. Plaintiff asserts that the Baltimore Department of Human Services supervises BCDSS. *Id.* ¶ 16.

As State Defendants note, Baltimore Department of Human Services appears to be a misnomer for the Maryland Department of Human Services ("DHS"). (ECF No. 24-1 at p. 1 n. 1.)[8] Accordingly, DHS will be substituted as the proper Defendant in place of the Baltimore

---

[6] The Amended Complaint does not specify when Plaintiff filed the charges of discrimination.
[7] Plaintiff incorrectly spells Defendant Jennifer Matthews's last name as Mathews.
[8] DHS is a "principal department" of Maryland state government. MD. CODE ANN., HUM. SERVS. § 2-201. BCDSS is a local department within DHS. *Id.* § 3-201. In her Omnibus Opposition, Plaintiff confirms that the individual

Department of Human Services and BCDSS. Plaintiff asserts the following counts as to all Defendants:

> Count I: Discrimination (National Origin) under Title VII;
>
> Count II: Discrimination (Gender) under Title VII;
>
> Count III: Hostile Work Environment under Title VII;
>
> Count IV: Discrimination (Race and National Origin) under the Maryland Fair Employment Practice Act ("MFEPA")[9];
>
> Count V: Retaliation under MFEPA; and
>
> Count VI: Negligent Infliction of Emotional Distress.[10]

(ECF No. 8 ¶¶ 84–138.)

On March 21, 2025, State Defendants filed a Motion to Dismiss. (ECF Nos. 24.) On April 12, 2025, Defendant Matthews filed a Motion to Dismiss. (ECF No. 33.) Plaintiff filed an Omnibus Opposition to both Motions on May 15, 2025. (ECF No. 37.) State Defendants filed a Reply Memorandum of Law in Support of Defendants' Motion to Dismiss on May 28, 2025. (ECF No. 40.) Plaintiff filed a Surreply on June 5, 2025, which the court construes as a Motion for Leave to File Surreply. (ECF No. 41.)

---

Defendants were employees of DHS assigned to BCDSS. (ECF No. 37 at p. 3.) On March 20, 2025, Plaintiff submitted a request for summons to be issued with an attached summons for DHS. (ECF No. 23.) The summons has not been issued.

[9] Plaintiff asserts Counts IV and V as violations of Maryland State Human Rights Law (NYSHL) and Maryland City Human Rights Law (NYCHL). As State Defendants correctly note in their Motion, "[t]here is no Maryland Law entitled Maryland State Human Rights Law or Maryland City Human Rights Law." (ECF No. 24-1 at p. 2 n. 2.) The cover page of Plaintiff's Amended Complaint appears to refer to MFEPA (Md. Code Ann., State Gov't § 20-601, *et seq*.) and Plaintiff confirms in her Omnibus Opposition that her state law claims are properly brought under MFEPA. (ECF No. 37 ¶ 1.) Accordingly, the court construes Counts IV and V as brought pursuant to MFEPA.

[10] Plaintiff erroneously identifies her claim for negligent infliction of emotional distress as Count V.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

The State Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that Eleventh Amendment immunity bars Plaintiff's MFEPA claims against them in their official capacities. (ECF No. 24-1 at pp. 9–10.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir.

2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-

PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III. ANALYSIS

As an initial matter, the court is ever mindful that pro se filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards than filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. State Defendants and Defendant Matthews's Motions to Dismiss

State Defendants argue that all of Plaintiff's claims should be dismissed because: (1) Plaintiff's Title VII and MFEPA claims are precluded as against them in their individual capacities; (2) Plaintiff has failed to effectuate service on State Defendants in their official capacities; (3) Eleventh Amendment sovereign immunity bars Plaintiff's state law claims (Counts IV and V) as against them in their official capacities; (4) Plaintiff failed to exhaust her administrative remedies as to claims of race and gender discrimination; (5) Plaintiff's Title VII claims fail to state claims upon which relief can be granted; and (6) negligent infliction of emotion

distress is not a recognized cause of action in the State of Maryland. (ECF No. 24-1 at pp. 5–18.) Defendant Matthews advances essentially the same arguments, save the arguments on sovereign immunity and failure to effectuate service. (ECF No. 33-1 at pp. 4–14.)

The court begins by addressing whether Eleventh Amendment sovereign immunity bars Plaintiff's state law claims against State Defendants.

### 1. *Eleventh Amendment Sovereign Immunity*

State Defendants argue that Eleventh Amendment immunity bars Plaintiff's MFEPA claims (Counts IV and V) against them in their official capacities. (ECF No. 24-1 at pp. 9–10.) In her Omnibus Opposition, Plaintiff responds that "Eleventh Amendment immunity bars the claims against [State Defendants] in their official capacity but not in their individual capacity." (ECF No. 37 at p. 2.)

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) ("[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.").

A finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such a claim. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

Sovereign immunity also bars suit against state agencies. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). As relayed above, DHS is a "principal department" of Maryland state government and BCDSS is a local department within DHS. MD. CODE ANN., HUM. SERVS. §§ 2-201, 3-201. DHS is thus a state agency entitled to sovereign immunity. *See Mack v. Maryland Dep't of Hum. Servs.*, Civ. No. DLB-23-1577, 2024 WL 580672, at *3 (D. Md. Feb. 13, 2024) (finding that "DHS qualifies for sovereign immunity."). Plaintiff asserts that State Defendants are all employees of DHS and each served, at various times, as Plaintiff's supervisor or manager. (ECF No. 8 ¶¶ 17–23.)

Relevant here, "[l]awsuits against state officials in their official capacities . . . are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (instructing that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018) (explaining that "because a state official sued in his official capacity stands in for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from suit."). "In contrast, the Eleventh Amendment does not bar 'an award

12

of damages against an official in his personal capacity [that] can be executed only against the official's personal asserts.'" *Adams v. Ferguson*, 884 F.3d 219, 224–25 (4th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions). The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

Of relevance here, Maryland has not waived its sovereign immunity as to MFEPA claims filed in federal court as the statute does not explicitly "specify the State's intention to subject itself to suit in federal court" and "cannot be read to waive the State's Eleventh Amendment immunity." *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see Mack v. Maryland Dep't of Hum. Servs.*, Civ. No. DLB-23-1577, 2024 WL 580672, at *4 (D. Md. Feb. 13, 2024) ("Maryland has not waived its immunity to MFEPA suits in *federal* court.") (emphasis in original).

Accordingly, the court will grant State Defendants Motion as to Counts IV and V, the MFEPA claims, as against State Defendants in their official capacity for lack of subject matter jurisdiction.

### 2. *Title VII Claims (Counts I, II, and III)*

By way of background, "Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. T*exas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

As stated previously, Plaintiff asserts that Defendants Salama, Akinsola, Cole, and Lewis-Lemon were her supervisors at BCDSS. (ECF No. 8 ¶¶ 17–20, 23.) She also asserts Defendants Matthews and Ballard were her managers. *Id.* ¶¶ 21–22. State Defendants and Defendant Matthews argue that Plaintiff is barred from bringing suit against them as individual supervisors and managers for alleged violations of Title VII because they do not qualify as "employers" within the meaning of the statute. (ECF No. 24-1 at pp. 5–7; ECF No. 33-1 at pp. 4–6.)[11] Plaintiff

---

[11] Ms. Matthews also asserts she is not employed by BCDSS or DHS, Plaintiff's employer, because she is personally employed by Baltimore County per an agreement between the County and the State of Maryland. (ECF No. 33-1 at

responds that she is not barred from bringing suit against individuals for alleged violations of Title VII and MFEPA because they are "agents of [her] employer" and their alleged conduct was "outside the scope of their employment[.]" (ECF No. 37 at p. 5.)

It is well established that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998); *see Abeles v. Metro. Washington Airports Auth.*, 676 F. App'x 170, 177 (4th Cir. 2017) (same). Indeed, "[a]n individual person can only be liable under Title VII if that person qualifies as an 'employer' within the meaning of the statute." *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 425 (D. Md. 2013); *see Tibbs v. Baltimore City Police Dep't*, No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012) (dismissing plaintiff's gender discrimination and retaliation claims against individual defendants on the basis that the individual defendants "are not individually liable under Title VII for the alleged wrongful conduct against [the] [p]laintiff"). "Title VII requires that a plaintiff who files a civil action claiming employment discrimination must name the head of the allegedly discriminating department or agency as the defendant." *Simmons v. Shalala*, 946 F. Supp. 415, 418 (D. Md. 1996), *aff'd*. 112 F.3d 510 (4th Cir. 1997) (citing 42 U.S.C. § 2000e–16(c)). "The head of the department or agency is the only proper defendant." *Id.*

Accordingly, Plaintiff's argument that her individual managers and supervisors are liable for Title VII violations as "agents" of her employer (DHS) fails. The proper Defendant in this case is DHS or the head of the agency, not the individual State Defendants or Defendant Matthews.

---

p. 5.) Ms. Matthews provides no support for this assertion. Inasmuch as this purports to raise a factual challenge to the Amended Complaint, the court disregards this assertion for purposes of evaluating the Matthews's Motion to Dismiss.

Therefore, Plaintiff's claims for violations of Title VII (Counts I through III) against State Defendants and Defendant Matthews will be dismissed.[12,13,14]

### 3. *Negligent Infliction of Emotional Distress Claim (Count VI)*

In Count VI, Plaintiff asserts all Defendants negligently inflicted emotional distress upon her by subjecting her to "frivolous suspensions," "attacks" based on her accent and national origin, and interfering with her prospective employment opportunities. (ECF No. 8 ¶¶ 134–137.) State Defendants and Defendant Matthews argue this claim should be dismissed because it is not a recognized cause of action in Maryland. (ECF No. 24-1 at pp. 17–18; ECF No. 33-1 at p. 14.) In her Omnibus Opposition, Plaintiff concedes that negligent infliction of emotional distress is not a viable cause of action in Maryland and requests to amend her complaint to change the claim to one for intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure 15. (ECF No. 37 at p. 11.)

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of service, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, however, "a party may amend its pleading only with the opposing party's written consent or the

---

[12] MFEPA is the state analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No. CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). "[B]ecause the [M]FEPA analysis tracks that of Title VII, there is no individual liability under [M]FEPA." *Id.*; *see Brown v. Baltimore Police Dep't*, RDB-11-00136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011) (explaining "[b]ecause supervisors cannot be liable in their individual capacities under Title VII . . . supervisors cannot be liable under . . . [M]FEPA."). Accordingly, Plaintiff's MFEPA claims (Counts IV and V) against State Defendants in their individual capacities and Defendant Matthews are similarly dismissed.

[13] As Plaintiff's Title VII and MFEPA claims against State Defendants and Defendant Matthews will be dismissed, the court need not address the arguments in Defendants' respective Motions as to administrative exhaustion and for failure to state a claim upon which relief can be granted.

[14] Additionally, the court need not address State Defendants' argument regarding Plaintiff's failure to effectuate service pursuant to Federal Rule of Civil Procedure 4(j)(2) and Maryland Rule 2-124(k).

court's leave." FED. R. CIV. P. 15(a)(2). As State Defendants note in their Reply "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Middleton v. Baltimore City Police Dep't*, No. CV ELH-20-3536, 2022 WL 268765, at *18 (D. Md. Jan. 28, 2022) (quoting *Sager v. Hous. Comm'n of Anne Arundel County*, 855 F. Supp. 2d 524, 557 (D. Md. 2012)).

Accordingly, Plaintiff must file a motion for leave to amend pursuant to Rule 15(a)(2).[15] As the parties note, and Plaintiff concedes, is it well established that "[n]egligent infliction of emotional distress is not a cognizable claim under Maryland law." *Littleton v. Swonger*, 502 F. App'x 271, 273 n.1 (4th Cir. 2012) (citing *Abrams v. City of Rockville*, 88 Md. App. 588, 596 (1991)). Therefore, Plaintiff's claim for negligent infliction of emotional distress against State Defendants and Defendant Matthews will be dismissed.

### B. Plaintiff's Motion for Leave to File Surreply

On June 5, 2025, Plaintiff filed a surreply to the Motions, which the court construes as a Motion for Leave to File a Surreply pursuant to Local Rule 105.2(a). (ECF No. 41.) In her proposed surreply, Plaintiff argues that she exhausted her administrative remedies before bringing suit against Defendants. *Id.* She also attaches the decision of an administrative law judge of the Maryland Office of Administrative Hearings regarding Plaintiff's appeal of a suspension without pay from February 2024. (Ex. 1, ECF No. 41-1.)

Although surreplies are generally not permitted, whether to permit a party to file a surreply is within the court's discretion. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom.*, 778 F.3d 463 (4th Cir. 2015). *See* Local Rule 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). "This

---

[15] In Plaintiff's consideration as to whether to file a motion for leave to amend her Amended Complaint to assert a claim of intentional infliction of emotional distress, the court commends to her attention the plethora of case law demonstrating the challenges in stating such a claim.

discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)). *See Freeman*, 961 F. Supp. 2d at 801 ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.") (citing *Khoury*, 268 F.Supp.2d at 605 (D. Md. 2003)).

This court has, however, "used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief." *Trainor v. McGettigan*, No. CV GLR-22-1505, 2023 WL 403621, at *2 (D. Md. Jan. 25, 2023). *See Carroll v. Porter*, No. CV GLR-23-02960, 2024 WL 3275482, at *4 (D. Md. July 2, 2024) (same); *Boland*, 628 F. Supp. 3d at 599 (same); *Wommack v. Ceres Terminals, Inc.*, No. CV JKB-19-1720, 2019 WL 4393136, at *2 (D. Md. Sept. 13, 2019) (same). Importantly, this court has permitted surreplies where a pro se plaintiff's surreply did not "unduly prejudice" defendants (including, *e.g.*, where the proposed surreply does not change the outcome of court's decision). *Williams v. Bartee*, No. CIV.A. CCB-10-935, 2011 WL 2842367, at *2 (D. Md. July 14, 2011), *aff'd sub nom. Williams v. Merritt*, 469 F. App'x 270 (4th Cir. 2012).

In view of these principles, the court will exercise its discretion to provide Plaintiff leave to file her surreply, and will direct that it be docketed. Plaintiff's surreply does not change this court's analysis; as such, State Defendants and Defendant Matthews suffer no prejudice.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motions (ECF Nos. 24, 33) and Plaintiff's Motion for Leave to File Surreply (ECF No. 41) shall be granted. The Amended

Complaint will be dismissed as against the State Defendants and Defendant Matthews; however, the court declines to dismiss the Amended Complaint with prejudice as requested at ECF No. 24 at p. 1 and ECF No. 33 at p. 1.

January 5, 2026

/S/
_____
Julie R. Rubin
United States District Judge